UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIONEL ALLEN,

                         Plaintiff,                    Case No. 13-CV-203 (KMK)

        -v-                                            OPINION & ORDER

NEW YORK CITY DEPARTMENT OF
ENVIRONMENTAL PROTECTION

                         Defendant.

Appearances

Jesse Curtis Rose, Esq.
The Rose Law Group PLLC
New York, N.Y.
*Counsel for Plaintiff*

Alexis Downs, Esq.
John S. Schowengerdt, Esq.
New York City Law Department
New York, N.Y.
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Lionel Allen ("Allen"), by his counsel, brings this Action against the New York

City Department of Environmental Protection ("DEP" or "Defendant"), alleging that Defendant

discriminated against him on the basis of his race and national origin.  Defendant moves to

dismiss pursuant to Rule 12(b)(6).  For the reasons stated below, the Motion is granted in part

and denied in part.

I.  BACKGROUND

A. Factual Background

Plaintiff's Complaint can be read to allege the following facts, which are accepted as true for the purposes of the instant Motion.  Plaintiff worked for Defendant from 1989 until January 6, 2012.  (Third Am. Compl. ("TAC") ¶¶ 10, 38 (Dkt. No. 23).)  During that time, Defendant hired no Black or Jamaican individuals, other than Plaintiff.  (*Id.* ¶¶ 13, 14.)  On a number of occasions, Plaintiff applied for promotions within his department, but did not receive them, despite the fact that Plaintiff regularly received positive performance reviews.  (*Id.* ¶¶ 12, 16.)  In each of these instances, a non-Black, non-Jamaican employee, some of whom had been trained by Plaintiff, was promoted instead of Plaintiff.  (*Id.* ¶ 16.)

For example, Plaintiff applied for the position of "Associate Project Manager" in June 2006, "Associate Project Manager" in December 2006, "Supervisor (Watershed Maintenance)" in January 2007, "Supervisor (Watershed Maintenance)" in June 2007, "Project Manager" in June 2007, "Supervisor Watershed Maintenance" in April 2008, "Supervisor Watershed Maintainers/Assistant Chief Operator" in June 2008, "Civil Engineer" in December 2008, "Associate Project Manager/Supervisor of Program Compliance" in December 2008, "Associate Project Manager" in February 2009, and "Associate Project Manager/Assistant to RMP Manager" in March 2009.  (*Id.* ¶ 17(a)–(k).)  Plaintiff alleges that he was qualified for all of these positions, but was denied each position in favor of a similarly or less qualified non-Black and non-Jamaican individual.  (*Id.* ¶¶ 17–18.)

In 2006, Plaintiff obtained a scholarship to pursue a degree in civil engineering.  (*Id.* ¶ 20.)  That same year, two White individuals, who were less experienced than Plaintiff, had worked for Defendant for less time than Plaintiff, and were less qualified than Plaintiff, were

2

promoted over Plaintiff to positions for which Plaintiff had applied.  (*Id.* ¶ 21.)  When Plaintiff

raised this issue with management, Defendant refused to act and instead "instructed [Plaintiff] to

wait."  (*Id.* ¶ 22.)

In September 2007, Plaintiff and his union representative met with Defendant's

employees to discuss Plaintiff's applications for promotion.  (*Id.* ¶ 23–24.)  During this meeting,

Plaintiff's union representative stated that the only possible reason for not promoting Plaintiff

was his race and national origin.  (*Id.* ¶ 24.)  Defendant's employees did not deny this assertion,

but instead promised Plaintiff a promotion if he refrained from reporting the issue to the Equal

Employment Opportunity Commission or filing an official complaint of discrimination.  (*Id.*

¶¶ 25–26.)

Following the September 2007 meeting, Plaintiff continued to apply for positions for

which he was qualified, including the position of "Project Manager" and "Dam Safety

Inspector," but was still not selected.  (*Id.* ¶ 27.)  On February 17, 2009, Plaintiff interviewed for

the position of "Dam Safety Inspector," but was told that he did not qualify because he did not

have a Professional Engineer's License.  (*Id.* ¶ 28.)  However, Plaintiff alleges that more than

one White employee was promoted to the position of "Dam Safety Inspector" without such a

license and that the only reason Plaintiff was not promoted to this position was because of his

race, national origin, and his September 2007 discrimination complaint.  (*Id.* ¶¶ 28, 29.)

In 2009, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC")

complaint, alleging that Defendant illegally discriminated against Plaintiff by failing to promote

him.  (*Id.* ¶ 30.)  "Immediately after Plaintiff filed this charge, Defendant's employees had

Plaintiff arrested" for what Plaintiff claims was a "clerical error" involving the recording of

dates when Plaintiff was absent from work due to jury duty.  (*Id.* ¶¶ 31–32, 33.)  Plaintiff claims

that such an error "is not typically handled in such a manner by Defendant" and that the criminal charges "were entirely retaliatory in reaction to [Plaintiff's] complaint of discrimination." (*Id.*) While the criminal charges against Plaintiff were ultimately reduced to a violation rather than a felony, Defendant also pursued disciplinary proceedings against Plaintiff for this incident. (*Id.* ¶ 34.)

Around the same time, Plaintiff's supervisor told Plaintiff to "jump, because there [was] nowhere else for [him] to go." (*Id.* ¶ 35 (internal quotation marks omitted).) Another of Plaintiff's supervisors, who had interviewed plaintiff for the position of "Dam Safety Inspector," told Plaintiff that he had seen Plaintiff's EEOC complaint and stated, "[I]f I were you, I would watch myself around here." (*Id.* ¶ 36 (internal quotation marks omitted).) Plaintiff interpreted his interactions with both supervisors to be threats of retaliation for Plaintiff's filing of the EEOC complaint. (*Id.* ¶¶ 35, 36.)

On February 3, 2010, Plaintiff fell while at work, injuring his shoulder and knee and necessitating medical leave. (*Id.* ¶¶ 37–38.) While Plaintiff was out on leave, Defendant terminated him, effective January 6, 2012. (*Id.* ¶ 38.) Plaintiff challenged this termination in New York state court and, on May 2, 2013, the Supreme Court of the State of New York found that Plaintiff had been "improperly terminated under Civil Service Law § 73, because his absences were due to a disability resulting from an occupational injury," and "because the DEP did not provide [Plaintiff] with a notice of intended action." *Allen v. City of New York*, 975 N.Y.S.2d 364, 364 (Sup. Ct. 2013). The court ordered Plaintiff be reinstated, *see id.* at 364, but, as of the date of the TAC, Defendant had not done so, (*see* TAC ¶ 39).

B.  Procedural Background

On January 8, 2013, Plaintiff filed his Complaint.  (*See* Dkt. No. 2.)  He filed an

Amended Complaint on January 28, 2013, (*see* Dkt. No. 4), a Second Amended Complaint on

May 31, 2013, (*see* Dkt. No. 17), and the TAC, the operative complaint for the purposes of the

instant Motion, on August 16, 2013, (*see* Dkt. No. 23).

Plaintiff's TAC alleges that Defendant failed to promote Plaintiff on the basis of his race

and national origin and discriminated against him in violation of the anti-discrimination

provisions of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the corresponding

New York State anti-discrimination statute.  (*See* TAC ¶¶ 46–49, 54–56, 60–62.)  In addition,

Plaintiff's TAC alleges that Defendant retaliated against Plaintiff for filing a discrimination

claim with the EEOC in violation of the applicable anti-retaliation provisions of the same

statutes.  (*Id.* ¶¶ 50–53, 57–59, 63–65.)  As a result of Defendant's actions, Plaintiff claims to

have suffered "loss of income, . . . salary, bonuses, benefits and other compensation," as well as

"future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and

other non-pecuniary losses," and "severe emotional and physical distress."  (*Id.* ¶ 43.)  By way

of remedy, Plaintiff seeks "all lost wages and benefits resulting from Defendant's unlawful

discrimination," (*id.* ¶ B), as well as "compensatory damages for mental, emotional and physical

injury, distress, pain and suffering[,] and injury to his reputation," (*id.* ¶ C), as well as any other

relief as the Court may deem equitable, (*id.* ¶ E).

Defendant filed its Motion To Dismiss on January 10, 2014, (*see* Dkt. No. 29), along

with Defendant's Memorandum of Law in Support of Defendant's Motion ("Def.'s Mem."), (*see*

Dkt. No. 31), and a Declaration of Adam E. Collyer in Support of the same ("Collyer Decl."),

(*see* Dkt. No. 30).  Plaintiff filed a Memorandum of Law in Opposition ("Pl.'s Mem.") on

January 30, 2014.  (*See* Dkt. No. 32.)  To date, Defendant has not filed a Reply to Plaintiff's

Memorandum of Law in Opposition, nor asked for an extension of time in which to do so,

despite the February 14, 2014 deadline to make such a request.[1]  (*See* Mot. Scheduling Order

(Dkt. No. 28).)  Therefore, the Court will consider the Motion on the papers received to date.

## II.  DISCUSSION

### A.  Standard of Review

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations and internal

quotation marks omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations

must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face."  *Id.* at 570.  But if a plaintiff has "not nudged [his or

her] claims across the line from conceivable to plausible, the[] complaint must be dismissed."

*Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.  But where the well-pleaded facts do

---

[1] Defendant's original counsel left the New York City Law Department, however, he did not do so until after the deadline for filing a Reply had passed.  (*See* Letter from Adam E. Collyer to the Court (May 27, 2014) (Dkt. No. 33).)  Furthermore, Defendant's current counsel has not raised this issue with the Court.

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original)

(citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendant's Motion To Dismiss, the Court is required to consider as true

the factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d

184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant

to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable

inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*,

572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  Moreover, "[i]n adjudicating a Rule 12(b)(6)

motion, a district court must confine its consideration to facts stated on the face of the complaint,

in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks omitted).

B.  Analysis

1.  Statute of Limitations

Defendant argues that several of the hiring decisions alleged by Plaintiff fall outside the

applicable statute of limitations and therefore cannot form a basis for Plaintiff's discrimination

claim.  Indeed, several of these claims are untimely.  For example, a number of the hiring

decisions to which Plaintiff objects occurred more than 300 days prior to his EEOC complaint.

However, "[a]n aggrieved employee wishing to bring a Title VII claim in district court must file

an administrative complaint with the EEOC within 300 days of the alleged discriminatory act."

*Petrosino v. Bell Atl.,* 385 F.3d 210, 219 (2d Cir. 2004); *see also* 42 U.S.C. § 2000e–5(e) (same);

*Sesay-Harrell v. N.Y.C. Dep't of Homeless Servs.*, No. 12-CV-925, 2013 WL 6244158, at *11

(S.D.N.Y. Dec. 2, 2013) (same).  While an exception to the statute of limitations exists where the

plaintiff can establish a "continuing violation," the law in the Second Circuit is that "multiple

incidents of discrimination, even *similar* ones, that are not the result of a discriminatory policy or

mechanism do not amount to a continuing violation."  *Sesay-Harrell,* 2013 WL 6244158, at *11

(quoting *Hongyan Lu v. Chase Inv. Serv. Corp.*, 412 F. App'x 413, 416 (2d Cir. 2011) (internal

quotation marks omitted)).[2]  Moreover, failure-to-promote or failure-to-hire claims, even where

the same employee has been repeatedly denied a position, do not constitute a continuing

violation, as, "every failure to promote is a discrete act that potentially gives rise to a

freestanding Title VII claim with its own filing deadline."  *Chin v. Port Auth. of N.Y. & N.J*, 685

F.3d 135, 157 (2d Cir. 2012); *see also Sareen v. Port Auth. of N.Y. & N.J.*, No. 12-CV-2823,

2013 WL 6588435, at *7 (S.D.N.Y. Dec. 16, 2013) ("The law in this Circuit is clear that . . .

failures to promote are discrete acts of discrimination and thus do not implicate the continuing-

violation doctrine." (internal quotation marks omitted)). *See generally Nat'l R.R. Passenger*

*Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (holding that each discrete act of discrimination

"constitutes a separate actionable 'unlawful employment practice'").  The EEOC received

---

[2] To be clear, Plaintiff is not claiming that a continuing violation occurred here.  (*See* Pl.'s Mem.
4.)  However, the adverse employment decisions Plaintiff asserts may provide context and
support for the timely claims that Plaintiff asserts.  *See Petrosino v. Bell Atl.*, 385 F.3d 210, 220
(2d Cir. 2004) (noting that "evidence of earlier promotion denials may constitute relevant
background evidence in support of a timely claim," and the court "consider[ed] it as such"
(internal quotation marks omitted).

Plaintiff's Charge of Discrimination on March 24, 2009 and is therefore barred from raising any Title VII claims based on violations that occurred prior to May 14, 2008.[3]

As for Plaintiff's New York State Human Rights Law ("NYHRL") claims, "the statute of limitations for claims under the [NYHRL] . . . is three years from the date that the claim accrues." *Sesay-Harrell*, 2013 WL 6244158, at *12 (internal quotation marks omitted); *see also E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013); N.Y. C.P.L.R. § 214(2). However, "the statute of limitations period is tolled during the period in which a complaint is filed with the EEOC and the issuance by the EEOC of a right-to-sue letter." *Sesay-Harrell*, 2013 WL 6244158, at *12; *see also Hanley v. Chi. Title Ins. Co.*, No. 12-CV-4418, 2013 WL 3192174, at *8 (S.D.N.Y. June 24, 2013) (collecting cases and noting that "[a]lthough the Second Circuit has yet to definitively opine on the issue of whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under NYHRL, numerous courts in this Circuit have held that the three-year statute of limitations

---

[3] While Plaintiff's TAC merely states that Plaintiff filed his EEOC Charge of Discrimination "[i]n or around April 2009," (TAC ¶ 30), the Court finds that the TAC incorporates the EEOC Charge of Discrimination by reference.  This document is attached to Mr. Collyer's Declaration as "Exhibit A," is signed by Plaintiff, and is dated March 16, 2009, but is stamped as "Received" by the EEOC on March 24, 2009.  (Collyer Decl. Ex. A, at unnumbered 3.)  A charge is not considered to be filed with the EEOC until the EEOC receives the charge and stamps it with the appropriate date. *See Gharzouzi v. Nw. Human Servs. of Penn.*, 225 F. Supp. 2d 514, 523-24 (E.D. Pa. 2002) (finding that the plaintiff's "charge was filed with the EEOC on the date the agency received his sworn, detailed complaint"); *Koch v. CGM Grp., Inc.*, No. 00-CV-216, 2001 WL 392523, at *7 (S.D. Ind. Apr. 3, 2001) ("Although the EEOC charge, which [the defendant] has attached as Exhibit A, was signed and notarized on May 19, that does not mean that it was 'filed' on that date, in the legally required sense.  A charge is not considered to be filed with the EEO until the EEOC receives the charge and stamps it with the appropriate date." (citing 42 U.S.C. § 2000e–5(e)(1) (Charges "shall be filed . . . in such form as the [EEOC] requires."); 29 C.F.R. § 1601.13(a)(4)(ii)(A) (The timeliness of the filing is determined by the date on which the charge is received by the EEOC.)).  In any case, when applying the statute of limitations, the time between Plaintiff signed his EEOC complaint and the date that it was stamped as received does not appear to make a difference here.

applicable to claims under NYHRL is tolled during the period in which a complaint is filed with

the EEOC." (internal quotation marks and alterations omitted)).  Plaintiff filed his EEOC charge

on March 24, 2009.  (*See* Collyer Decl. Ex. A, at unnumbered 3.)  Though Plaintiff's TAC

contains no information about when Plaintiff received a right-to-sue letter, Plaintiff's original

Complaint includes a right-to-sue letter dated October 26, 2012 as an attachment, (*see* Compl. at

unnumbered 11–13), and the envelope corresponding to this letter is date-stamped November 15,

2012, (*id.* at unnumbered 13).[4]  Drawing all reasonable inferences in Plaintiff's favor, the Court

will assume that Plaintiff received his right-to-sue letter on November 18, 2012, at which time

the running of the statute of limitations on Plaintiff's NYHRL claims resumed.  *See Sherlock v.*

*Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) ("Normally it is assumed that a mailed

document is received three days after its mailing.")  Therefore, Plaintiff's NYHRL claims are

limited to those events that occurred no earlier than May 14, 2006.[5]

Lastly, Plaintiff's § 1981 discrimination claims are subject to a four-year statute of

limitations.  *See Burgis v. Dep't of Sanitation City of N.Y.*, No. 13-CV-1011, 2014 WL 1303447,

at *4 (S.D.N.Y. Mar. 31, 2014) ("Although § 1981 does not contain a statute of limitations, the

Supreme Court has held that the four-year federal 'catch-all' statute of limitations applies."

---

[4] The Court may properly consider materials attached to Plaintiff's original Complaint.  *See, e.g.*,
*Brodeur v. City of New York*, No. 96-CV-9421, 1998 WL 557599, at *2 (S.D.N.Y. Sept. 2, 1998)
(considering documents that "were attached to plaintiff's original complaint" in deciding a
motion to dismiss a plaintiff's amended complaint), *aff'd*, 182 F.3d 898 (2d Cir. 1999).

[5] Plaintiff's EEOC charge was filed on March 24, 2009, which provided grounds for claims
dating back three years, to March 24, 2006.  At that time, the statute of limitations was tolled
pending a right-to-sue letter from the EEOC.  It resumed on November 18, 2012, when Plaintiff
is presumed to have received the right-to-sue letter.  Fifty-one days passed between receipt of
this letter and Plaintiff's filing of the Complaint on January 8, 2013.  Thus, the three-year statute
of limitations period advances by 51 days from March 24, 2006, limiting Plaintiff's basis for
claims to events that occurred on or after May 14, 2006.

(citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004))).  Accordingly, only

Plaintiff's claims based on events that occurred on or after January 8, 2009 can provide a basis

§ 1981 relief.[6]

### 2.  Plaintiff's Discrimination Claim

Plaintiff claims that he suffered discrimination due to both disparate treatment by

Defendant and Defendant's failure to promote Plaintiff.  (*See* Pl.'s Mem. 6.)  "The substantive

standards applicable to claims of employment discrimination under Title VII, which are also

generally applicable to claims of employment discrimination brought under § 1981 . . . and the

NYSHRL are . . . well established."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir.

2010) (citation omitted) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir.

2004)).  In order to establish a prima facie case of discrimination due to disparate treatment, a

plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the

position he held; (3) he suffered an adverse employment action; and (4) the adverse action took

place under circumstances giving rise to an inference of discrimination."  *Reynolds v. Barrett*,

685 F.3d 193, 203 (2d Cir. 2012) (alteration and internal quotation marks omitted).  These

elements largely overlap with those of a failure to promote or hire claim, which requires that

"(1) [Plaintiff] is a member of a protected class; (2) [Plaintiff] applied and was qualified for a

job for which the employer was seeking applicants; (3) [Plaintiff] was rejected for the position;

and (4) the position remained open and the employer continued to seek applicants having the

[P]laintiff's qualifications."  *Rodriguez v. City of New York*, No. 13-CV-6552, 2014 WL

---

[6] Plaintiff does not dispute Defendant's application of the statute of limitations for Plaintiff's
§ 1981 claims.  (*See* Pl.'s Mem. 4.)

1399415, at *2 (E.D.N.Y. Apr. 10, 2014) (quoting *Estate of Hamilton v. City of New York,* 627 F. 3d 50, 55 (2d Cir. 2010)).

"A plaintiff cannot establish a prima facie case of discrimination under Title VII based on purely conclusory allegations of discrimination, absent any concrete particulars." *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 572 (S.D.N.Y. 2012) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (internal quotation marks omitted)).  However, to survive a motion to dismiss, "a complaint need not establish a prima facie case of employment discrimination . . . [but] the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Mohawk v. William Floyd Sch. Dist.*, No. 13-CV-2518, 2014 WL 838162, at *2 (E.D.N.Y. Mar. 3, 2014) (second alteration in original) (internal quotation marks omitted). Plaintiff has pleaded sufficient facts in his TAC to meet this requirement.  With respect to the first prong of both his disparate treatment and failure-to-promote claims, he has plead that he is a member of a protected class, both with respect to his race and his national origin.  (*See* TAC ¶¶ 1, 14.)  Plaintiff has also pleaded that he was qualified for his current job, in that "throughout his employment" he has "been an exemplary employee" who "regularly received positive reviews" and "never [had] any problems with his performance prior to his complaints of discrimination."  (*Id.* ¶¶ 11–13.)  He also claims to have been qualified for the positions for which he applied and was rejected—in fact, Plaintiff claims to have trained several people who were promoted over him.  (*Id.* ¶¶ 16–19, 21.)  With respect to the third and fourth prongs of Plaintiff's failure-to-promote claims, Plaintiff has alleged that he applied for and was rejected from several positions that fall within the period set by the statute of limitations discussed above.  (*Id.* ¶¶ 17, 28–29.)  Plaintiff further alleges that these positions were ultimately filled by non-Black and non-Jamaican individuals who were less or similarly qualified as Plaintiff.  (*Id.* ¶¶ 17,

12

28.)  Such allegations are sufficient to allege a failure-to-promote claim.  *See, e.g.*, *Castillo v. Time Warner Cable of N.Y.C.*, No. 09-CV-7644, 2011 WL 3475419, at *6 (S.D.N.Y. Aug. 9, 2011) (holding that "the allegation that the position went to a less qualified nonminority technician [was] sufficient to establish an inference of discrimination" for the plaintiff's failure-to-promote claim); *Chacko v. Worldwide Flight Servs., Inc.*, No. 08-CV-2363, 2010 WL 424025, at *4 (E.D.N.Y. Feb. 3, 2010) (finding the plaintiff's allegation "that he was rejected in favor of a younger and less-qualified" nonminority candidate to be "sufficient to give rise to an inference of discrimination").

With respect to the third and fourth prongs of his disparate treatment claim, Plaintiff has pleaded that Defendant's treatment of the alleged clerical error related to Plaintiff's jury service—including the filing of criminal charges against Plaintiff and Defendant's failure to handle the matter solely through internal processes—amounted to a discriminatory adverse employment action, and that "non-Black and non-Jamaican employees [were] not subjected to criminal charges for clerical errors and are . . . provided opportunities to correct such errors." (TAC ¶¶ 31–34.)  These actions by Defendant may, after discovery, prove to amount to less than an actionable adverse employment action.  *See Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (finding that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner"); *Sesay-Harrell*, 2013 WL 6244158, at *15 (finding that allegations of "standard disciplinary measures . . . would not suffice to constitute an adverse employment action").  At this stage of this case, however, Plaintiff's allegations that Defendant disciplined Plaintiff differently than similarly-situated "non-Black and non-Jamaican employees," (TAC ¶ 34), sufficiently pleads this aspect of his claim for Rule 12(b)(6) purposes.

*See, e.g.*, *Norris v. Metro-N. Commuter R.R. Co.*, 522 F. Supp. 2d 402, 410 (D. Conn. 2007) (finding that the plaintiff successfully alleged a prima facie case of racially motivated discrimination on an unfair discipline theory where the plaintiff "committed a violation which resulted in arguably less damage, yet received harsher punishment than his white peers"); *cf.* *Brown v. Middaugh*, 41 F. Supp. 2d 172, 188 (N.D.N.Y. 1999) (granting summary judgment in favor of the defendant where the plaintiff raised a claim for "unfair discipline for tardiness" and failed to show that "similarly situated white [employees] . . . received preferential treatment in these matters").

Furthermore, Plaintiff's allegation that Defendant "refused to reinstate the employment of Plaintiff due to his Race [and] National Origin" after his termination was held to have been illegal, (TAC ¶¶ 38–40), sufficiently alleges an adverse employment action and Defendant's discriminatory intent.  *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009) (noting that "[a]n employee seeking a renewal of an employment contract, just like a new applicant or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII," and that "the mere fact that the employer's decision not to renew is completely discretionary does not mean that it is not an 'adverse' employment decision"), *superseded by statute on other grounds,* Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85, *as recognized in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 108–109 (2d Cir. 2013); *Wanamaker v. Town of Westport Bd. of Educ.*, No. 11-CV-1791, 2014 WL 1281937, at *1 (D. Conn. Mar. 27, 2014) (denying the defendant's motion for summary judgment with respect to the plaintiff's claim that the defendant's refusal to reinstate her to a teaching position was an adverse employment action).

14

Defendant's argument that Plaintiff's allegations are "conclusory" and "speculative" is unavailing. (*See* Def.'s Mem. 8–9.) To the contrary, Plaintiff's TAC catalogues each of the positions he applied for, that he was denied those positions, that "[o]n each occasion, a non-Black and non-Jamaican employee was promoted over Plaintiff," and that "Plaintiff was the only Black or Jamaican employee in shaft 18" at the "Valhalla location from 1989 to present." (TAC ¶¶ 13–14, 16–17, 28.) These pleadings are not mere "naked assertions devoid of further factual enhancement." *Giraud v. Bd. of Educ., Newburgh Enlarged City Sch. Dist.*, No. 12-CV-1842, 2013 WL 3776242, at *4 (S.D.N.Y. July 17, 2013) (quoting *Iqbal*, 556 U.S. at 678). Rather, they reflect the factual basis that one might expect from an employee-plaintiff prior to discovery.

Moreover, "a plaintiff need not plead a prima facie case of employment discrimination," but must nevertheless "set forth factual circumstances—such as preferential treatment given to dissimilarly situated individuals, or remarks that convey discriminatory animus—from which the Court can infer discrimination on the basis of protected status." *Winston v. City of New York*, No. 12-CV-0395, 2014 WL 2957488, at *1 (E.D.N.Y. July 1, 2014) (internal quotation marks omitted); *see also Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ.*, No. 13-CV-6429, 2014 WL 3547374, at *4 (E.D.N.Y. July 16, 2014) (noting that, to survive a motion to dismiss, a plaintiff asserting employment discrimination "need not plead all the facts necessary to establish a prima facie case, but must [merely] satisfy the provisions of Fed. R. Civ. P. 8, by making a short and plain statement of the claim showing the pleader is entitled to relief" (internal quotation marks omitted)); *Clarke v. InterContinental Hotels Grp., PLC*, No. 12-CV-2671, 2013 WL 2358596, at *6 (S.D.N.Y. May 30, 2013) (noting that "the pleading requirements in discrimination cases are very lenient, even de minimis," and that "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss," but must

15

merely "be facially plausible and must give fair notice to the defendants of the basis for the

claim" (internal quotation marks omitted)); *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673,

679 (S.D.N.Y. 2009) (noting that a complaint alleging "employment discrimination claims need

not contain specific facts establishing a prima facie case of discrimination") (citing *Swierkiewicz*

*v. Sorema N.A.,* 534 U.S. 506, 514 (2002)).  Plaintiff's TAC meets these requirements.

Accordingly, Defendant's Motion To Dismiss Plaintiff's discrimination claim is denied.

### 3.  Plaintiff's Retaliation Claim

"To establish a prima facie case of retaliation, an employee must show [1] participation

in a protected activity known to the defendant; [2] an employment action disadvantaging the

plaintiff; and [3] a causal connection between the protected activity and the adverse employment

action."  *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (internal quotation marks omitted).

Here, Plaintiff has pleaded that he filed his EEOC charge, and that around the same time, he was

warned by two of his supervisors about the charge.  (*See* TAC ¶¶ 30, 35, 36.)  Specifically,

Plaintiff alleges that one of his supervisors referenced the EEOC complaint and suggested that

Plaintiff "watch [himself] around here," (*id.* ¶ 36 (internal quotation marks omitted)), while the

other supervisor told Plaintiff to "jump" as "there is nowhere else for [Plaintiff] to go," (*id.* ¶ 35

(internal quotation marks omitted)).  Around the same time, Plaintiff alleges that Defendant

handled the clerical error with respect to Defendant's jury duty reporting by filing a charge with

the police, in deviation from Defendant's typical handling of such errors.  (*Id.* ¶¶ 31–32.)  These

allegations satisfactorily plead the first two elements of a retaliation claim.

With respect to the third prong of Plaintiff's retaliation claim, Defendant argues that the

TAC fails to satisfactorily plead a causal connection between Plaintiff's filing of an EEOC

complaint and Plaintiff's subsequent arrest.  (*See* Def.'s Mem. 9–10.)  In its Memorandum in

Support, Defendant rightly notes that recent Supreme Court precedent requires "Title VII retaliation claims . . . be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (internal quotation marks omitted) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* — U.S. —, 133 S.Ct. 2517, 2533 (2013)).  However, Plaintiff's "presentation of a temporal connection" can be "enough, in and of itself . . . to permit a reasonable jury to find causation." *Summa v. Hofstra Univ.,* 708 F.3d 115, 127 (2d Cir. 2013); *see also Separ v. Nassau Cnty. Dept. of Soc. Servs.*, No. 11-CV-2668, 2014 WL 4437676, at *7 (E.D.N.Y. Sept. 9, 2014) ("Plaintiff's burden to establish a prima facie case, which is 'minimal,' can be met by proffering evidence of a close temporal connection between the protected activity and the adverse employment action.").  There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," and a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases."  *Summa,* 708 F.3d at 128 (quoting *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009)) (internal quotation marks omitted).  *Compare Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's EEOC complaint, was in response to the plaintiff's protected activity), *with Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45–46 (2d Cir. 1980) (finding that the lapse of eight months between an EEOC complaint and retaliatory act indicated a causal connection).

17

Here, Defendant claims that it was not aware of Plaintiff's EEOC charge until July 21,

2009, nearly four months after Plaintiff filed the charge, and after the alleged retaliatory police

complaint.  (*See* Def.'s Mem. 9–10.)  Plaintiff's TAC does not specify the date of Plaintiff's

arrest, nor the date of his supervisors' remarks, stating instead that the arrest occurred

"immediately after Plaintiff filed [the EEOC] charge" and that the supervisors' statements were

made "in or around this time."  (TAC ¶¶ 31, 35–36.)  The TAC is ambiguous as to the time

period Plaintiff refers to when pleading that the supervisors' comments were made "[i]n or

around this time."  (*Id.* ¶¶ 35, 36.)  Depending on whether Plaintiff intends this phrase to refer to

the time when Plaintiff was arrested, (*id.* ¶ 31), or when the criminal "charges were ultimately

reduced to a violation," (*id.* ¶ 34), this time period could vary.  Reading the TAC broadly in

Plaintiff's favor, the Court can plausibly interpret the TAC to allege that the supervisors'

comments were made "in or around" the time of Plaintiff's arrest for purposes of the instant

Motion.  Thus, Plaintiff's supervisor's comments plausibly suggest that Defendant was aware of

the EEOC complaint around the time that Defendant filed its complaint against Plaintiff with the

police, providing sufficient grounds for an inference that the events were causally related.  *See,*

*e.g.*, *Winston v. City of New York*, No. 12-CV-0395, 2014 WL 2957488, at *2 (E.D.N.Y. July 1,

2014) (finding the plaintiff's allegation that the time between the protected activity and the

adverse employment action in question coincided with a vacation, which was "typically a matter

of two to three weeks," pleaded "facts sufficient to raise an inference of retaliatory animus" for

motion to dismiss purposes); *Jones v. Onondaga Cnty. Res. Recovery Agency*, No. 13-CV-1425,

2014 WL 2480170, at *8 (N.D.N.Y. June 3, 2014) (denying the defendant's motion to dismiss,

despite the fact "that [the] [p]laintiff's retaliation claims barely provide plausible factual

allegations supporting a prima facie case of retaliation because the allegations are so vague and

conclusory, they do give [the] [d]efendants fair notice of the basis for Plaintiff's claims," and noting that "[d]iscovery can be used to delineate and define these issues, and a motion for summary judgment can be made if it is contended after discovery that the claims are insufficient").  Here, discovery will undoubtedly be helpful in clarifying when Defendant knew about Plaintiff's EEOC complaint and whether a causal relationship exists between Plaintiff's EEOC complaint and the filing of a criminal complaint against Plaintiff.  In the meantime, Plaintiff's claim is plausible.  Thus, Defendant's Motion is denied without prejudice with respect to Plaintiff's retaliation claims.

### 4.  Defendant DEP was Improperly Named

Plaintiff has named the DEP as the sole Defendant in this Action.  (*See* TAC.)  However, as Defendant correctly notes in its Memorandum in Support of its Motion, agencies of the City of New York cannot be sued in their own names.  (*See* Def.'s Mem. 10 n.3.)  Therefore, the proper defendant in this Action is the City of New York.  *See* N.Y. City Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency . . . ."; *Kelly v. N.Y.C. Dep't of Envtl. Prot.*, No. 13-CV-1110, 2014 WL 837469, at *7 (N.D.N.Y. Mar. 4, 2014) (noting that "at least two other federal courts have dismissed § 1983 claims against the DEP because they were improperly named as a defendant," and construing the plaintiff's complaint, which named DEP, as to be against the City of New York); *Heneghan v. N.Y.C. Admin. for Children's Servs.*, No. 03-CV-2992, 2006 WL 2620430, at *7 (E.D.N.Y. Sept. 12, 2006) (noting that "agencies of the City of New York cannot be sued in their own names," and suggesting that the City of New York should be substituted as the defendant where a plaintiff errantly names a city agency); *Russell Pipe & Foundry Co. v. City of New York*, No. 94-CV-8642, 1997 WL 80601, at

19

*6 (S.D.N.Y. Feb. 25, 1997) (dismissing the plaintiffs' claim against the DEP "on the ground that it is not a suable entity").  Accordingly, the Court orders that the City of New York ("the City") be substituted in place of DEP for the remainder of this Action and will consider this substitution to have been made.

### 5.  *Monell* Liability

Lastly, Defendant challenges Plaintiff's § 1981 claim because it fails to articulate an official policy or custom that caused Plaintiff's constitutional violation under the standard articulated in *Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 658 (1978), and thus fails to plead municipal liability.  (*See* Def.'s Mem. 10.)  Defendant is correct in noting that, in order to state a § 1981 claim, Plaintiff must allege "that the challenged acts were performed pursuant to a municipal policy or custom."  *Patterson*, 375 F.3d at 226.  It is well-settled that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell,* 436 U.S. at 691. Furthermore, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior."  *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478 (1986); *see also Vassallo v. Lando,* 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

20

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York,* 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd,* 75 Fed. App'x 827 (2d Cir. 2003).  Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]."  *Newton,* 566 F. Supp. 2d at 271; *see also City of Oklahoma v. Tuttle,* 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." (plurality opinion)); *Brogdon v. City of New Rochelle,* 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken."  *Newton,* 566 F. Supp. 2d at 271 (footnote omitted).

"A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker . . . ."  *Id.*  Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  *Brown,* 520 U.S. at 404; *see also Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation").  To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at

issue is permanent and well-settled.  *See Praprotnik,* 485 U.S. at 127 (noting that the Supreme

Court "has long recognized that a plaintiff may be able to prove the existence of a widespread

practice that, although not authorized by written law or express municipal policy, is so

permanent and well settled as to constitute a custom or usage with the force of law" (internal

quotation marks omitted)).

   Here, Plaintiff does not allege that the acts taken by Defendant in not promoting Plaintiff

and retaliating against Plaintiff for his EEOC complaint were performed pursuant to a municipal

custom or practice of discrimination.  "Obviously, the City of New York does not promulgate

any official policy of discrimination along the lines plaintiff suggests."  *Jimenez v. City of New*

*York*, 605 F. Supp. 2d 485, 530 (S.D.N.Y. 2009) (noting that "[a] trip to the City's web site

reveals just the opposite; the City claims to be an equal opportunity employer").  "However,

repeated actions can rise to the level of a policy if they are so consistent and widespread that

they constitute a custom or usage sufficient to impute constructive knowledge of the practice to

policymaking officials, or if the actions are directed or endorsed by someone who qualifies as a

'policy-maker' for the City."  *Id.; see also Patterson*, 375 F.3d at 226 (noting that, in order "[t]o

show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation,"

but may instead show "that a discriminatory practice of municipal officials was so persistent or

widespread as to constitute a custom or usage with the force of law, or that a discriminatory

practice of subordinate employees was so manifest as to imply the constructive acquiescence of

senior policy-making officials" (internal quotation marks omitted)).

   Plaintiff alleges that Defendant repeatedly denied him promotions for which he was

qualified over the past 23 years, (*see* TAC ¶ 15, 16), and instead has consistently hired non-

Black and non-Jamaican applicants, some of whom Plaintiff had trained, (*id.* ¶¶ 16, 17).  In

support of these allegations, Plaintiff has alleged that he was the only Black or Jamaican employee at the Valhalla shaft 18 location during the more than 20 years that he worked there, from 1989 to 2012.  (*Id.* ¶ 13–14, 38.)  Plaintiff also alleges that, when he raised the hiring disparity with Defendant, he was told by Defendant to wait, (*id.* ¶ 22), and that when, in a meeting with supervisors and managers employed by Defendant, his union representative asserted that racial or national origin discrimination was the cause of Defendant's failure to promote Plaintiff, none of Defendant's employees denied this assertion, (*id.* ¶¶ 24–25).

A "racial imbalance in the makeup of a workplace is insufficient, by itself, to demonstrate discrimination."  *Branch v. Sony Music Entm't, Inc.*, No. 97-CV-9238, 2001 WL 228108, at *6 (S.D.N.Y. Mar. 8, 2001), *aff'd,* 34 F. App'x 23 (2d Cir. 2002).[7]  Furthermore, alleged discrimination suffered by Plaintiff alone is not sufficient to plead a policy or custom under *Monell.  See Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 209 (S.D.N.Y. 2011) (finding "no evidence at all of a custom of policy by the MTA to engage in racial discrimination," and noting that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy" (internal quotation marks

---

[7] Indeed, a number of courts in the Second Circuit have held that such an allegation is insufficient to comprise a prima facie case of discrimination.  *See Anderson v. City of New Rochelle*, No. 10-CV-4941, 2012 WL 3957742, at *13 (S.D.N.Y. Sept. 4, 2012) (noting that the "[p]laintiff's assertion that there were no African Americans working as full-time laborers in July 2007 has limited, if any, probative value" in the court's pretext analysis); *Anderson v. Hertz Corp.,* 507 F. Supp. 2d 320, 329 (S.D.N.Y. 2007) (finding the fact that the plaintiff was the only African American manager at a particular site to be insufficient evidence of discrimination at prima facie stage of analysis), *aff'd,* 303 F. App'x 946 (2d Cir. 2008); *Branch*, 2001 WL 228108, at *6 (noting that the "plaintiff is incorrect in her assertion that the absence of African-Americans in her former department is evidence of discrimination"); *see also Saenger,* 706 F. Supp. 2d 494, 516 (noting that courts routinely reject statistical evidence that is anecdotal or insufficiently complete to permit a reasonable inference of discrimination).

omitted)); *Edwards v. City of New York*, No. 03-CV-9407, 2005 WL 3466009, at *11 (S.D.N.Y. Dec. 19, 2005) (dismissing the plaintiff's § 1981 claims against the city for failure to plead a policy or pattern of discrimination, and noting that *Monell* "would be rendered sterile if, as [the] plaintiff asserts, mere conclusory allegations of a few isolated incidents of discrimination against an individual plaintiff were sufficient to hold the municipality liable"); *Brodeur v. City of New York*, No. 96-CV-9421, 1998 WL 557599, at *9 (S.D.N.Y. Sept. 2, 1998) (dismissing the plaintiff's complaint on grounds that "the complaint alleges no other facts allowing the court to draw an inference that the actions complained of were the result of a policy, as the allegations pertain to events visited upon plaintiff alone"), *aff'd*, 182 F.3d 898 (2d Cir. 1999).  No more helpful is Plaintiff's allegation that the Defendant failed to promote him after multiple applications sufficient to suggest that the Defendant engaged in discrimination with respect to race or national origin.  *See Jimenez*, 605 F. Supp. 2d at 530–31 (holding that "the repeated failure to offer plaintiff to jobs for which his qualifications were not markedly superior to the selected candidates' [qualifications] does not raise any inference of a pattern or practice of discrimination").  Finally, even Plaintiff's allegation that he "was the only Black or Jamaican employee in shaft 18" at the "Valhalla location from 1989 to present," (TAC ¶¶ 13–14), is not sufficient for the court to conclude that this demographic makeup was the result of a pattern or practice on the part of Defendant.  *See Calhoun v. Bd. of Educ. of Arbor Park Sch. Dist. No. 145, Cook Cnty., Ill.*, No. 13-CV-1866, 2013 WL 4845460, at *2–3 (N.D. Ill. Sept. 9, 2013) (dismissing the plaintiff's § 1983 discrimination claim on *Monell* grounds, as the "[p]laintiff's allegation that she was the only African–American employee of the defendant, by itself, is not sufficient to plausibly suggest above a speculative level that defendant had a permanent and well-settled practice of racial discrimination").  Even accepting the facts in Plaintiff's TAC as

24

true, and drawing the appropriate inferences in his favor, he fails to sufficiently allege a discriminatory custom or policy by Defendant.  Plaintiff's § 1981 claims are therefore dismissed.

### 6.  Title VII Claims Survive

While "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981," there are nonetheless several differences between Title VII and § 1981. *Patterson*, 375 F.3d at 225.  As discussed above, the statute of limitations period are a significant difference between these statutes, as is § 1981's requirement that the plaintiff demonstrate a municipal's liability under *Monell*.  *See id.* at 225–26.  In addition, "Title VII claims are not cognizable against individuals," in contrast to claims brought under § 1981.  *Id.* at 226.  Lastly, "in certain circumstances a Title VII claim may be established through proof of a defendant's mere negligence, without a showing of discriminatory intent, [however] a plaintiff pursuing a claimed violation of § 1981 . . . must show that the discrimination was intentional."  *Id.* (citation omitted).  Though plaintiffs frequently pursue claims against municipalities under both Title VII and § 1981, the differences between the statutes can create circumstances where a plaintiff is unable to pursue a claim under one statute, or elects not to, but may still assert a claim under the other statute.  *See, e.g., Annis v. Cnty. of Westchester*, 36 F.3d 251, 255 (2d Cir. 1994) (holding that "an employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under § 1983 alone, and is not required to plead concurrently a violation of Title VII").  And so it is here, at least with respect to Defendant's Motion To Dismiss.

"Municipal employers are subject to Title VII's prohibition on employment discrimination."  *United States v. City of New York*, 847 F. Supp. 2d 395, 408 (E.D.N.Y. 2012); s*ee also Annis,* 36 F.3d at 254; *Briscoe v. City of New Haven*, No. 09-CV-1642, 2013 WL

6047202, at *3 (D. Conn. Nov. 14, 2013) ("The City of New Haven is a municipal employer subject to Title VII.").  A number of courts in the Second Circuit have permitted Title VII claims to advance in the absence of section 1981 and/or section 1983 claims that the plaintiff concurrently asserted.  *See DeNigris v. New York City Health & Hospitals Corp.*, 861 F. Supp. 2d 185, 187, 197 (S.D.N.Y. 2012) (noting that the plaintiff failed to oppose the defendants' objection to municipal liability under § 1983 and granting summary judgment in favor of the defendants with regard to the plaintiff's § 1983 claim, but denying the defendants' summary judgment motion with respect to the plaintiff's racial discrimination and retaliation claims under Title VII); *Sims v. City of New York*, No. 08-CV-5965, 2010 WL 3825720, at *13 (S.D.N.Y. Sept. 30, 2010) (granting summary judgment in favor of the defendants with respect to the plaintiff's section 1981 claim, as well as other claims, but denying the defendant's motion for summary judgment with respect to several "discrete acts of discrimination under Title VII"); *see also Coleman v. Town of Brookhaven*, No. 08-CV-379, 2010 WL 1685848, at *9 (E.D.N.Y. Apr. 23, 2010) (granting summary judgment in favor of the defendants with respect to the plaintiff's section 1981 and 1983 claims, among others, while denying summary judgment with respect to the plaintiff's Title VII retaliation claim).  The Court does not find, nor has Defendant asserted, any reason why Plaintiff's Title VII claims should not proceed in the absence of his § 1981 claim at this time, though the Court may revisit the issue, should Defendant elect to raise it as part of future briefing in this case.

III.  CONCLUSION

For the reasons discussed above, Defendant's Motion To Dismiss is granted with respect to Plaintiff's § 1981 claims and denied with respect to Plaintiff's other claims.  The Clerk of the Court is respectfully requested to terminate the pending Motion, (*see* Dkt. No. 29), and to substitute the City of New York for the New York City Department of Environmental Protection as the Defendant in this Action.

SO ORDERED.

Dated:  September 30, 2014
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

27